IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TROY BAKER,<br><br>              Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and GENSCO, INC.,<br><br>              Defendant. | Cause No. CV **9:15-CV-00074-RWA**<br><br>FINDINGS<br>AND RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE |

## INTRODUCTION

Plaintiff Troy Baker brings this action against Defendants Hartford Life and Accident Insurance Company and Gensco, Inc. seeking additional long term disability benefits under 29 U.S.C. § 1132(a)(1)(B). Defendants Hartford Life and Accident Insurance Co. and Gensco, Inc. filed a motion requesting the Court to dismiss Baker's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

The facts are not in dispute. Hartford Life and Accident Insurance Company ("Hartford") issued a group long term disability ("LTD") Plan to Gensco, Inc. Baker was formerly employed by Gensco, Inc. as a delivery driver. Baker submitted a claim for LTD benefits under the Plan stemming from a work-related injury he sustained on September 18, 2006. Baker was notified by letter dated June 27, 2011, that he was eligible for LTD benefits for the twenty four month period

1

from December 19, 2006 through December 18, 2008, because he was prevented by accidental bodily injury "from performing one or more of the Essential Duties of Your Occupation." After the initial twenty four month period, Baker was entitled to continued LTD benefits only if his injuries "prevented [him] from performing one or more of the Essential Duties of Any Occupation." The term "Essential Duty" is defined in the letter as:

> [A] duty that:
>
> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> 3. can not be reasonably omitted or changed.
>
> To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

The term "Any Occupation" is defined in the policy as:

> [A]n occupation for which you are qualified by education, training or experience, and that had an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

The letter of June 27, 2011, also notified Baker that "[t]he weight of the medical evidence in your claim file at this time supports your ability to perform other occupations from December 19, 2008 and beyond." Hartford notified Baker that the Employment and Retirement Income Security Act ("ERISA") gave him "the right to appeal [Hartford's] decision and receive a full and fair review[,]" and that if Baker wanted to appeal such decision, "[he] or [his] authorized representative must write to [Hartford] within one hundred eighty (180) days from [Baker's] receipt of [the] letter."

Baker appealed Hartford's June 27, 2011, decision. In a letter dated January 26, 2012, Hartford upheld its prior decision, advising Baker that "[its] determination remains that the

documentation in [Baker's] claim file, taken as a whole, does not support [that Baker was] unable to perform one or more of the Essential Duties of Any Occupation as of December 19, 2008." Hartford also notified Baker that he could "bring a civil action under Section 502(a) of [ERISA]." Baker filed his suit under 29 U.S.C. § 1132(a)(1)(B).

Defendants seek dismissal of Baker's complaint arguing it is barred by the contractual limitations period of the Policy because the Hartford Policy provides that "[l]egal action cannot be taken against [Hartford Life and Accident Insurance Company] . . . three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy." Gensco, Inc.'s LTD Plan similarly provides that "[l]egal action cannot be taken against [Hartford Life and Accident Insurance Company] . . . more than 3 years after the date Proof of Loss is required to be given according to the terms of The Policy." The Plan provides:

> Written Proof of Loss must be sent to [Hartford Life and Accident Insurance Company] within 90 days after the start of the period for which [Hartford Life and Accident Insurance Company] [is] liable for payment. If proof is not given by the time it is due, it will not affect the claim if:
>
> 1) it was not possible to give proof within the required time; and
> 2) proof is given as soon as possible; but
> 3) not later than 1 year after it is due, unless You are not legally competent.

## DISCUSSION

A claim may be dismissed under Rule 12(b)(6) either because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In addressing a Rule 12(b)(6) challenge, the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex*

3

*Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "[D]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). To survive a motion to dismiss under Civil Rule 12(b)(6), a complaint need only set forth a short and plain statement of the claim showing the pleader is entitled to relief; it "does not need detailed factual allegations[.]" *Twombly*, 127 S. Ct. at 1964. Nevertheless, a plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 7.

Defendants' motion to dismiss is accompanied by four exhibits: Hartford's June 27, 2011, letter to Baker; Hartford's January 26, 2012, letter to Baker; the Policy; and the Plan. As previously noted, the facts in this case are not in dispute and Baker does not dispute the authenticity of the exhibits attached to the Defendants' brief in support of their motion to dismiss. Thus, the Court concludes that it is appropriate to consider the letters, the Policy and the Plan in deciding the motion to dismiss without converting the motion to one for summary judgment. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (The "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.") (citations omitted).

Defendants argue that Baker's action is time-barred by the three-year limitations period set out in the Plan and Policy. In his response, Baker concedes "there is no question the lawsuit

was filed after the three-year period prescribed by the Plan had lapsed[,]" but argues that Montana's eight-year statute of limitations should apply because Hartford failed, in its letter of January 26, 2012, to notify Baker of the applicable contractual statute of limitations as required by 29 C.F.R. § 2560-503-1(g)(iv). In support of his argument, Baker summarily states that "[t]he Plan language here requires a lawsuit to be filed within three years of the final denial of the administrative appeal." *See* Response Brief, p.7. In their reply, Defendants argued *inter alia* and for the first time that Baker's "lawsuit is time barred even if the 8-year statute of limitations he advocates is applied." The undersigned entered an Order January 6, 2016, granting Baker time to file a sur reply setting forth his position on when the 8-year statute of limitations, if applicable, began to run. Baker filed his sur reply on January 11, 2016. Defendants' motion to dismiss is now ready for decision.

Citing *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir. 1984), *Price v. Provident Life & Accident Ins. Co.*, 2 F.3d 986, 988 (9th Cir. 1993), and *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000), Baker argues that his cause of action accrued on January 26, 2012, when he was notified, after exhausting all administrative remedies, that his claim for additional benefits was denied. Relying on the same cases, Baker contends that "the statute of limitations did not begin to run on Plaintiff's eight-year breach of contract claim until benefits were actually denied or when Plaintiff had reason to believe the claim had been denied." The Court disagrees with Baker's latter contention.

First, this Court agrees that in *Menhorn*, the Ninth Circuit "accept[ed] the proposition that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are

5

denied." 738 F.2d at 1501. However, in *Menhorn*, the Ninth Circuit was addressing in the first instance whether the plaintiff's claim fell within ERISA's jurisdictional reach where all of the relevant acts giving rise to his claim occurred pre-ERISA. 738 F.2d at 1501-02. *Price* is more on point in that it was an ERISA action where the insurer moved to dismiss arguing the action was barred by both the statute of limitations and the contractual limitations period. 2 F.3d at 988. There, the Ninth Circuit rejected the insurer's argument that the plaintiff's claim had expired before the plaintiff may have known he had a claim, concluding that the statute of limitations was not triggered until the plaintiff learned that his benefits had been denied. *Id.* The Ninth Circuit in *Price* remanded the matter to the lower court to determine when the plaintiff knew that his request for benefits had been denied.

In *Wetzel*, the Ninth Circuit, citing *Menhorn* and *Price*, held "that under federal law, an ERISA cause of action accrues either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." 222 F.3d at 649. While the plaintiff in *Wetzel* had commenced his ERISA action within the statutory limitations period, the Ninth Circuit remanded the matter for further proceedings on the issue of whether the plaintiff's action was contractually barred by the limitations provision in the applicable policy. *Id.* at 650.

*Menhorn* and *Wetzel* are not persuasive under the facts of this case, and while *Price* tends to support Baker's position, it was abrogated by the Supreme Court in *Heimeshoff v. Hartford Life & Accident Ins. Co.*, ––– U.S. –––, 134 S.Ct. 604, 610, 187 L.Ed.2d 529 (2013). In *Heimeshoff*, the Supreme Court recognized that "a participant and a plan may agree by contract to a particular limitation period, even one that starts to run before the cause of action accrues,]" 134 S.Ct. at 610, explaining:

6

> The principle that contractual limitations provisions ordinarily should be
> enforced as written is especially appropriate when enforcing an ERISA plan. "The
> plan, in short, is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569
> U.S. ——, ——, 133 S.Ct. 1537, 1548, 185 L.Ed.2d 654 (2013). "[E]mployers
> have large leeway to design disability and other welfare plans as they see fit."
> *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S.Ct. 1965, 155
> L.Ed.2d 1034 (2003). And once a plan is established, the administrator's duty is
> to see that the plan is "maintained pursuant to [that] written instrument." 29
> U.S.C. § 1102(a)(1). This focus on the written terms of the plan is the linchpin of
> "a system that is [not] so complex that administrative costs, or litigation expenses,
> unduly discourage employers from offering [ERISA] plans in the first place."
> *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130
> (1996).
>
> Heimeshoff's cause of action for benefits is likewise bound up with the
> written instrument. ERISA § 502(a)(1)(B) authorizes a plan participant to bring
> suit "to recover benefits due to him *under the terms of his plan*, to enforce his
> rights *under the terms of the plan*, or to clarify his rights to future benefits *under
> the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). That
> "statutory language speaks of '*enforc [ing]*' the 'terms of the plan,' not of
> *changing* them." *CIGNA Corp. v. Amara*, 563 U.S. ——, ——, 131 S.Ct. 1866,
> 1877, 179 L.Ed.2d 843 (2011). For that reason, we have recognized the particular
> importance of enforcing plan terms as written in § 502(a)(1)(B) claims.

*Id.*, at 611-12. (Emphasis in original).

The Policy and Plan applicable in this case contractually established not only a limitations period, but also the time of commencement of such limitations period. Specifically, with respect to challenging the Plan's disposition of a claim via a legal action in state or federal court, the Policy and Plan both provide that no legal action to recover any benefits may be brought more than three years after the date Proof of Loss is required to be given according to the terms of the Policy. The Policy directs that Proof of Loss must be provided "within 90 days after the start of the period for which [Hartford] owe[s] payment." Here, Hartford owed Baker LTD benefits as of December 19, 2006, and ninety days after such date was March 19, 2007. The start date for any limitation period is thus March 19, 2007. *See Heimeshoff*, 134 S.Ct. at 611 ("The duration of a

7

limitations period can be measured only by reference to its start date.")

As noted, the Plan provides a 3-year limitations period for bringing legal actions. If that limitations period is applied in this case, Baker was required to initiate this action on or before March 19, 2010, which Baker did not do. Baker argues, however, that Hartford's failure to mention the specific statute of limitations in its January 26, 2012, letter was a violation of 29 C.F.R. § 2560.503-1(g)(iv), and that the proper remedy for such violation is to set aside the contractual limitation in favor of Montana's eight-year breach of contract statute of limitations.

The ERISA "claims procedure" regulation relating to § 1133[1] and upon which Baker relies, is 29 C.F.R. § 2560.503–1. That regulation provides in pertinent part:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination.... The notification shall set forth, in a manner calculated to be understood by the claimant—... A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503–1(g)(1)(iv). The foregoing claims procedure regulation clearly requires that a claims denial letter include notice about the administrative review procedures and the time limits for filing that apply to those procedures as well as the fact that the claimant has a right to bring a civil action under § 502(a) of ERISA. What is not clear, and which the Court need not

---

[1] Section 1133, the ERISA "claims procedure" provision, states in pertinent part: "In accordance with regulations of the Secretary, every employee benefit plan shall ... afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). The starting point for the interpretation of a statute is its language. When a statute's language is plain, courts enforce it according to its terms, unless such a reading would render it absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Here, it is clear that § 1133(2) involves only the administrative review that the ERISA fiduciary conducts. 29 U.S.C. § 1133(2). Courts are not ERISA fiduciaries, and the statutory provision does not mention courts or judicial review.

8

decide, is whether the regulation also requires a claims denial letter to include notice about the time limits applicable to filing a civil action. Under the facts of this case, deciding whether Hartford violated 29 C.F.R. § 2560.503-1(g)(iv) and whether an eight-year statute of limitations should apply is not necessary because the eight-year statute of limitations--which, like the contractual period of limitations, began on March 19, 2007--expired in March of 2015, over three months prior to the commencement of this case on June 24, 2015. In sum, Baker's complaint was not timely under either the contractual limitations period or Montana's eight-year statute of limitations.

## RECOMMENDATION

Baker's complaint cannot be saved by amendment. Therefore, the undersigned recommends that Defendants' Motion to Dismiss filed November 16, 2015, at docket no. 17, be granted; and that this matter be dismissed.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff Troy Baker may serve and file written objections to this Findings and Recommendation within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*,

951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

Done and dated at Butte this 20th day of January, 2016.

                                                  RICHARD W. ANDERSON
                                                  UNITED STATES MAGISTRATE JUDGE